UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOUJOUD ACJKAR and, JOSEPH ACHKAR, W/H<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC., *et al.*<br><br>Defendants. | CIVIL ACTION<br>No.: 18-cv-2860 |

### DEFENDANT WALMART, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE PLAINTIFFS FROM INTRODUCING INTO EVIDENCE OR PRESENTING TO THE JURY ANY PART OF PLAINTIFF'S MEDICAL RECORDS

**I.    MATTER BEFORE THE COURT**

Defendant Walmart, Inc. ("Moving Defendant") Motion *in Limine* to preclude Plaintiffs from introducing into evidence or presenting to the jury any part of Plaintiff's medical records.

**II.    QUESTION(S) PRESENTED**

Whether Plaintiffs should be precluded from introducing into evidence or presenting to the jury any part of Plaintiff's medical records since no expert testimony will be provided to help the jury understand the contents of such records?

**SUGGESTED ANSWER: Yes.**

Whether Plaintiffs should be precluded from introducing into evidence or presenting to the jury any part of Plaintiff's medical records since no expert testimony will be provided to help the jury understand the contents of such records?

**SUGGESTED ANSWER: Yes.**

Whether Plaintiffs should be prohibited from presenting to the jury the medical opinions and diagnoses contained in the medical records since they are inadmissible hearsay?

**SUGGESTED ANSWER: Yes.**

### III. STATEMENT OF FACTS

Plaintiffs have advised counsel and the Court that they intend to have Plaintiff's son, a doctor, read into evidence thirty-eight (38) pages of records that were selected from the extremely voluminous set of records from Lehigh Valley Hospital Records which totals well over a thousand pages. (The records Plaintiff's counsel intends to have his son read are attached hereto as Exhibit "A").

At the outset, it should be noted that almost the entirety of the records Plaintiffs seek to present to the jury contains extremely technical medical terminology and phrases, many of which are written in short hand by the various authors of such records. The average lay person can certainly not be expected to have the requisite knowledge and/or skill to read and comprehend the contents of these medical records. By way of example, the following is an excerpt from one of the medical records Plaintiffs seek to present to the jury which reflects the extreme complexity of the information:

> Events of last night noticed.Pt transferred to MICU.
> Pt is Awake today, she doesn't follow commands consistently.
> But response to some arabic words.
> R.hemiparesis. R.Clonus (UE & LE), Up-going toe on the R.
>
> CSF results Noticed:
> **WBC 333, RBC 10, 84% N, glucose 34, protein 111**
> Encephalitis/meningitis panel - negative.
>
> MRI brain:
> 1. There are lesions with T2 FLAIR signal abnormalities with local mass effect and enhancement involving the left frontal lobe,, left thalamus, posterior limb of the left internal capsule, periventricular white matter and the posterior body of caudate nucleus. Small focus of restricted diffusion within a central ring-enhancing lesion. Enhancement of the leptomeninges. Overall the findings are most compatible with an encephalitis and leptomeningitis. The differential diagnosis includes the possibility of ADEM or possibly lymphoma.
> 2. Nonspecific T2 hyperintense lesions within the white matter.

(See Exhibit "A", bates number 776)

The following is yet another prime example of the type of highly technical language used throughout these records:

> **Progress Notes by Laura E Berman, PA-C at 05/04/17 0805**
> Author: Laura E Berman, PA-C       Service: Neurology               Author Type: Physician Assistant
> Filed: 05/04/17 1347                        Date of Service: 05/04/17 0805   Status: Attested
> Editor: Laura E Berman, PA-C (Physician Assistant)
> Related Notes: Original Note by Laura E Berman, PA-C (Physician Assistant) filed at 05/04/17 1346
> Cosigner: Hussam A Yakoub, DO at 05/04/17 1528
> Attestation signed by Hussam A Yakoub, DO at 05/04/17 1528
>
> I saw and evaluated the patient on 05/04/17 and agree with the APC's findings and plan as documented to include my comments as below.
>
> This is a 76 yo woman immunosuppressed on Enbrel presenting with right hemiparesis and found to have an abnormal MRI of the brain and an abnormal CSF study: high WBCs (Ns) and elevated protein. The DDX is broad.
>
> I personally reviewed the MRI and record. I doubt Toxo as this is not the typical imaging-appearance of it. Toxo usually involves the basal ganglia and is not typicall multifocal. IgG is elevated but not IgM (serum).
>
> ID is following pt and treating with **Amp for Listeria, positive in blood cultures (most likely source)**. The MRI appearance is not typical for rhombenencephalitis.
>
> Other infectious agents: Such as HSV; neg PCR. Highly doubt Lyme or WNV based on CSF findings.
>
> Would check for HIV.

(See Exhibit "A", bates number 812)

There is no question that in order to understand the highly technical terminology used in these records, medical background and/or training is required—this background and/or training is well beyond that possessed by the average jury.

The complexity of the language creates a significant comprehension barrier in and of itself. Magnifying greatly the comprehension barrier is the fact that the records are completely randomized partial entries pulled from throughout the voluminous set of medical records from Lehigh Valley Hospital.

A review of the records reveals there is no rhyme or reason to the records selected. By way of example, the bate numbers for the first handful of documents is as follows: 696, 697, 704, 721, 730, 744, 750. (See Exhibit "A"). Plaintiff does not intend to present to the jury a sequential set of documents but rather individual pages at random. Moreover, the majority of the isolated pages that Plaintiffs intend to present to the jury are incomplete records. By way of example, bates number 704, an emergency department encounter resident note, clearly continues onto another page yet Plaintiffs only wish to read the first page without presenting to the jury the entirety of such entry. Bates number 721 is yet another example of the incompleteness of the entries— the entry explicitly states "continued" yet Plaintiff only intends to present a small excerpt of the entry without any context. (See Exhibit "A"). Not a single entry included in this packet of records by Plaintiffs appears to be complete.

Finally, it is undisputed that these medical records contain a significant number of medical opinions and diagnoses. Plaintiffs do not intend to present any type of medical expert, let alone the author of such records, to testify as to the contents of the records and the medical opinions and diagnoses contained therein. As explained in more detail below, this is improper hearsay and must not be allowed.

**IV.  Legal Argument**

> A. Plaintiff must be prohibited from introducing into evidence or presenting to the jury any part of Plaintiff's medical records since no expert testimony will be provided to help the jury understand the contents of such records.

There is no question that the extremely technical medical terminology and phrases, many of which are written in short hand by the various authors of such records, is well beyond the common knowledge of the average layperson and requires the help of an expert with the appropriate scientific, technical, or other specialized knowledge. The two examples cited above which portray the complex nature of the records is only a small snapshot of the type of language littered throughout every page of the records. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The Advisory Committee Notes to Fed. R. Evid. 702 recognizes the need for expert witness testimony: "An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. The most common source of this knowledge is the expert witness..."

There is no question that in order for a jury to develop any understanding of the extremely technical medical terminology and phrases, many of which are written in short hand by the various authors of such records, expert testimony is required. Pursuant to Fed. R. Civ. P. 26(a)(2)(A) "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

In this matter, Plaintiffs have identified Michael A. Sulzinkski, Ph.D. as their expert. Plaintiffs will rely solely upon Michael A. Sulzinkski, Ph.D. in their attempt to establish their theories of liability in this matter. A review of Dr. Sulzinkski's *curriculum vitae* reveals that he

obtained a bachelor's degree with a major in plant science and a Ph.D. with a major in plant pathology and a minor in biochemistry & molecular pathology. (See Exhibit "B"). It is undisputable that Dr. Sulzinkski had no medical education or training. (See Exhibit "B").

Plaintiffs are not attempting to offer him as a medical expert as evidenced by their Pre-Trial Memorandum which lists him as "Plaintiff's expert on listeria." It is important to note that v requires that a party produce a report of its expert containing *inter alia* "**a complete statement of all opinions the witness will express and the basis and reasons for them**." Fed. R. Civ. P. 26(a)(2)(B). If an expert's initial report does not include a complete statement of opinions to be expressed and the basis for these opinions, a court may prohibit the expert from later testifying on issues or opinions not addressed in the initial report. *Johnson v. Vanguard Mfg., Inc.*, 34 Fed. Appx. 858, 859.

Given that Dr. Sulzinkski himself does not possess the requisite knowledge to explain the technical medical records from Lehigh Valley Hospital to the jury, Dr. Sulzinkski will not be able to offer such an opinion at trial. Without the aid of an expert opinion, the jury cannot be expected to be able to understand the contents of the records. Therefore, presenting to the jury the complexity of the subject medical records would only serve to confuse the jury and in no way aid their decision making process. As such, to allow Plaintiffs to proceed in such a manner would be unfairly prejudicial to the Defendants. As such, Plaintiff should be barred from introducing into evidence or presenting to the jury any part of Plaintiff's medical records

> B. At the very minimum, Plaintiffs must be prohibited from presenting to the jury the medical opinions and diagnoses contained in the medical records since they are inadmissible hearsay.

As noted above, pursuant to Fed. R. Civ. P. 26(a)(2)(A) "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of

Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(B) requires that a party produce a report of its expert containing inter alia "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). If an expert's initial report does not include a complete statement of opinions to be expressed and the basis for these opinions, a court may prohibit the expert from later testifying on issues or opinions not addressed in the initial report. *Johnson v. Vanguard Mfg., Inc.*, 34 Fed. Appx. 858, 859.

The only expert report produced by Plaintiffs in this litigation is that of Michael A. Sulzinkski, Ph.D. Plaintiffs are not attempting to have a medical expert testify in this case but rather seek to present to the jury Plaintiff's medical records from Lehigh Valley Hospital. Interspersed throughout these medical records are medical opinions and diagnoses from various medical providers who will not be testifying at this trial—there is no question that such opinion and diagnoses are hearsay. Fed. R. Evid. 801 provides that 'Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.'

Plaintiffs' sole purpose for reading the records into the evidence is to avoid the need to have a medical expert come into Court and testify at trial as to Plaintiff's diagnoses—as such, it is clear that the statements are being offered for the truth of the matter asserted. This Court's opinion the unpublished case of *Tenney v. City of Allentown*, No. CIV.A. 03-3471, 2004 WL 2755538, at *2 (E.D. Pa. Nov. 30, 2004) provides direct guidance on the issue. (See Copy of *Tenney v. City of Allentown*, No. CIV.A. 03-3471, 2004 WL 2755538, at *2 (E.D. Pa. Nov. 30, 2004) attached hereto as Exhibit "C"). This Court stated in that case "opinions and diagnoses within the records of the health care providers who have not been offered as experts under Fed.R.Civ.P. 26(a)(2)(A)" were excluded. *Id.* These are the exact circumstances here—Plaintiffs are attempting to read into

the record opinions and diagnoses within the records of Plaintiff's treating medical providers who have not been offered as experts.

Accordingly, pursuant to *Tenney v. City of Allentown*, No. CIV.A. 03-3471, 2004 WL 2755538, at *2 (E.D. Pa. Nov. 30, 2004), such opinion and diagnoses must be excluded. *Tenney v. City of Allentown*, No. CIV.A. 03-3471, 2004 WL 2755538, at *2 (E.D. Pa. Nov. 30, 2004)

## V. RELIEF REQUESTED

For the foregoing reasons, Defendant Walmart Inc. respectfully requests that this Honorable Court grant its Motion *in Limine* to preclude Plaintiffs from introducing into evidence or presenting to the jury any part of Plaintiff's medical records.

**DELANY McBRIDE**

By: /s/ John J. Delany, III, Esq.
JOHN J. DELANY, III, ESQ.
Attorney for Defendant,
Walmart, Inc.

Dated: April 22, 2019